**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF GEORGIA**
**MACON DIVISION**

| | |
|---|---|
| QUINETTE WESTBROOKS, | |
| *Plaintiff,* | |
| v. | **CIVIL ACTION NO.** |
| | **5:17-cv-00365-TES** |
| GEORGIA DEPARTMENT OF HUMAN SERVICES, | |
| *Defendant.* | |

## ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

In its Motion for Summary Judgment [Doc. 29] now before the Court, Defendant Georgia Department of Human Services contends that Plaintiff Quinette Westbrooks' discrimination claims under the Americans with Disabilities Act are barred by Eleventh Amendment immunity. [Doc. 29-1 at pp. 3–6]. Defendant is correct.

In addition to her claims under the Americans with Disabilities Act, Plaintiff also asserted race-discrimination claims under Title VII. As for these claims, Defendant argues that they fail as a matter of law. [*Id.* at pp. 6–20]. While Defendant is ultimately correct that it is entitled to summary judgment on Plaintiff's Title VII claims as well, the Court's reasoning is somewhat different than the arguments presented by Defendant. Nevertheless, as discussed more fully below, the Court **GRANTS** Defendant's Motion for Summary Judgment.

# I.    FACTUAL BACKGROUND

Due to the Court's reasoning in this Order, the facts of this case are, for the most part, of little importance. However, in order to provide some setting for Plaintiff's claims and taking all reasonable inferences in her favor, a brief recitation of the facts of this case appears to be as follows.[1]

In June of 2015 (at the latest),[2] Defendant Georgia Department of Human Services moved Plaintiff to the first floor of her office building where it was extremely cold. [Doc. 37-1 at ¶ 2]. That same month, Plaintiff began asking for an accommodation from the cold temperature due to certain medical conditions that limited her ambulatory movement. [*Id.* at ¶ 4]. These accommodation requests continued for over a year, and during that time, the cold air aggravated Plaintiff's medical condition. [*Id.* at ¶¶ 5, 7].

On May 24, 2016, Plaintiff sent "a renewed email about the cold air aggravating her medical condition" and once again asked for an accommodation. [*Id.* at ¶ 8]. Then, over a month later, Defendant provided Plaintiff "with [a second-floor] office from

---

[1] The Court will note that the exact factual timeline is terribly hard to decipher. Plaintiff never established a definite, easy-to-follow description of exactly when Defendant committed the alleged violations against her. In fact, her deposition testimony often conflated the timing of her various alleged disabilities and medical treatments and she rarely, if ever, associated her various grievances with the same time period. The Court has waded through this record in order to ascertain the facts as best it can. However, a district court is never required to cull through a dense record in order to make a party's case for them.

[2] *See* n.1, *supra.*

which she could control the temperature of her work space." [Doc. 51-4 at p. 3].[3]

However, in August[4] of 2016, Plaintiff requested an ink cartridge for her individual

desk printer. [Doc. 37-1 at ¶ 14]. Rather than replace the depleted ink cartridge,

Defendant came into Plaintiff's new office and removed her individual desk printer. [*Id.*

at ¶ 14]; [Doc. 51-4 at p. 3]. Despite a request that Defendant return her printer, it did

not return it, and as a result, Plaintiff had to walk down to the first floor to a network

printer in order to obtain her work assignments. [Doc. 37-1 at ¶ 16].[5]

Put succinctly, Plaintiff maintains that Defendant's failure to provide reasonable

accommodations to her in light of her medical condition and its refusal to provide her

with an individual desk printer because of her race violates the ADA and Title VII.

## II.    THE AMERICANS WITH DISABILITIES ACT

Before embarking in what is sure to be a somewhat intensive, time-based inquiry

with respect to Plaintiff's race-discrimination claims under Title VII of the Civil Rights

Act of 1964 (Title VII), 42 U.S.C. §§ 2000e to 2000e-17, the Court, as a preliminary matter,

---

[3] *See* Fed. R. Civ. P. 56(c)(3).

[4] Even though Plaintiff provides two different months regarding *when* Defendant took her individual desk printer, it was certainly sometime around July or August of 2016. *Compare* [Doc. 37-1 at ¶ 14] *with* [Doc. 29-20, Westbrooks Depo., pp. 175:6–12, 177:9–12]. Notwithstanding Plaintiff's confusion when presenting the timeline for her case, the Court, giving her the benefit of all doubt, will consider August of 2016 as the time Defendant removed her individual desk printer. *See* Section III(B), *infra*.

[5] This was cause for concern, because Plaintiff's co-worker, Bessie Stewart, who also suffered from an ambulatory disability, was allowed to keep her individual desk printer. [Doc. 37-1 at ¶ 20]. However, as the Court explains below, the comparative facts surrounding Bessie Stewart, for purposes of this lawsuit, are irrelevant.

addresses Plaintiff's claims asserted under the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12101 to 12117.

In her Complaint, Plaintiff alleges, *inter alia*, that Defendant's failure to accommodate her medical condition and subsequent retaliation against her for requesting medical accommodations violates the ADA. [Doc. 1 at pp. 5–6]. Notably, Plaintiff does not specify in her Complaint any particular provision of the ADA she claims Defendant allegedly violated. Instead, she only asserts that Defendant's "refusal to accommodate" her medical condition "caus[ed] [it] to worsen" and that Defendant retaliated against her for making accommodation requests. [*Id.*]. Thus, based on her Complaint and the parties' arguments, it appears that Plaintiff asserts her disability-based discrimination and retaliation claims pursuant to Title I and Title V of the ADA, respectively.

To the extent Plaintiff brings a discrimination claim under Title I of the ADA based on Defendant's alleged failure to accommodate her disability, she is barred from bringing this claim in federal court. After finding that Congress did not validly abrogate states' immunity from suits for money damages brought under Title I of the ADA, the United States Supreme Court directly held that "[s]uits in federal court by state employees to recover money damages by reason of the State's failure to comply with Title I of the ADA are barred by the Eleventh Amendment." *Bd. of Trs. of Univ. of Ala. v. Garrett*, 531 U.S. 356, 356, 363–74 (2001). Plaintiff correctly argues that Georgia has

waived its sovereign immunity from federal discrimination claims brought pursuant to the ADA in state court through its legislative enactment of the Fair Employment Practices Act. [Doc. 37 at pp. 6–7]. However, her reliance on *Williamson v. Dep't of Human Resources*, is simply misplaced when it comes to her claim under Title I of the ADA brought in federal court, because the Eleventh Circuit Court of Appeals has recognized that "[a] state does not waive immunity against a federal law by waiving immunity against a similar state law." 572 S.E.2d 678, 681 (Ga. Ct. App. 2002); *Stroud v. McIntosh*, 722 F.3d 1294, 1299 n.2 (11th Cir. 2013); *see also Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 91–92 (2000). Therefore, while Plaintiff could have sued Defendant for money damages under the ADA in state court, she cannot do so in this court.

Title V of the ADA provides that "[n]o person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). This title does not contain its own remedy or procedure of redress for a violation. *See* 42 U.S.C. § 12203(c). Instead, damages for Title V's prohibition on retaliation can only be made through "[t]he remedies and procedures available under" other titles. *Marx v. Ga. Dep't of Corr.*, No. 7:12–CV–92 (HL), 2013 WL 5347395, at *3–4 (M.D. Ga. Sept. 23, 2013) (citing 42 U.S.C. § 12203(c)). Given that Plaintiff's claim under Title V of the ADA is "predicated on a violation of some other

ADA title," logic dictates that it must also be barred by the Eleventh Amendment. *Marx*, 2013 WL 5347359, at *4 (citing *Collazo-Rosado v. Univ. of P.R.*, 775 F. Supp. 2d 376, 384 (D.P.R. 2011)). Allowing Plaintiff to proceed on this claim "would allow her to bypass the immunity Defendant[ ] would otherwise receive under the Eleventh Amendment" with respect to the clearly-barred claim under Title I of the ADA. *Marx*, 2013 WL 5347395, at *4 (discussing Congress's valid abrogation of ADA claims under Title II of the ADA and pointing out a clear distinction between the Title II claims at issue in *Tennessee v. Lane*, 541 U.S. 509, 522–23 (1978), and the Title I claims addressed by *Garrett*, 531 U.S. at 361–63, that only implicated the Equal Protection Clause of the Fourteenth Amendment). Thus, like her discrimination claim under Title I of the ADA, Plaintiff's retaliation claim under Title V cannot be brought in federal court.

Based on the constitutional bar raised by the Eleventh Amendment, the Court must **GRANT** summary judgment to Defendant on Plaintiff's ADA claims because they only concern Titles I and V. However, a discussion as to Plaintiff's race-discrimination claims still remains.

### III.    TITLE VII

Given the Eleventh Amendment's foreclosure of Plaintiff's ADA claims, Plaintiff must show that Defendant discriminated against her on the basis of her race in order to survive summary judgment. In addition to the ADA claims asserted in her Complaint, Plaintiff also alleges that because of her race, she suffered an adverse employment

action and that Defendant treated a woman outside of her protected class more favorably. [Doc. 1 at pp. 4, 6]. Defendant counters by arguing that Plaintiff's race-based discrimination claims under Title VII are due to be dismissed as a matter of law and because she failed to properly exhaust her administrative remedies with the Equal Employment Opportunity Commission. [Doc. 29-1 at pp. 6–20].

## A.    Standard of Review

A court must grant summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is not genuine unless, based on the evidence presented, "'a reasonable jury could return a verdict for the nonmoving party.'" *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real Prop.*, 941 F.2d 1428, 1437 (11th Cir. 1991)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The movant may support its assertion that a fact is undisputed by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials." Fed. R. Civ. P. 56(c)(1)(A).[6] "When the nonmoving party has the burden of proof at trial, the moving party is not

---

[6] Courts may consider all materials in the record, not just those cited by the parties. Fed. R. Civ. P. 56(c)(3).

required to 'support its motion with affidavits or other similar material negating the opponent's claim[]' in order to discharge this 'initial responsibility.'" *Four Parcels of Real Prop.*, 941 F.2d at 1437–38 (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). Rather, "the moving party simply may show—that is, point out to the district court— that there is an absence of evidence to support the nonmoving party's case." *Id.* (cleaned up). Alternatively, the movant may provide "affirmative evidence demonstrating that the nonmoving party will be unable to prove its case at trial." *Id.*

The burden then shifts to the nonmoving party, who must rebut the movant's showing "by producing . . . relevant and admissible evidence beyond the pleadings." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1315 (11th Cir. 2011) (citing *Celotex Corp.*, 477 U.S. at 324). The nonmoving party does not satisfy its burden "if the rebuttal evidence 'is merely colorable, or is not significantly probative' of a disputed fact." *Id.* (quoting *Anderson*, 477 U.S. at 249–50). "A mere scintilla of evidence supporting the [nonmoving] party's position will not suffice." *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). Further, where a party fails to address another party's assertion of fact as required by Fed. R. Civ. P. 56(c), the Court may consider the fact undisputed for purposes of the motion. Fed. R. Civ. P. 56(e)(2). However, "credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. *Anderson*, 477 U.S. at 255. Stated differently, "the judge's function is not himself to weigh the evidence and determine the

truth of the matter but to determine whether there is a genuine issue for trial." *Id.* at 249.

"The evidence of the [nonmovant] is to be believed, and all justifiable inferences are to

be drawn in his favor." *Id.* at 255.

### B.      Charge of Discrimination

Prior to filing a Title VII claim in federal court, a plaintiff must first exhaust her

administrative remedies by timely filing a Charge of Discrimination with the Equal

Employment Opportunity Commission ("EEOC"). *Mitchell v. Univ. of N. Ala.*, 785 F.

App'x 730, 735 (11th Cir. 2019) (citing *Gregory v. Ga. Dep't of Human Res.*, 355 F.3d 1277,

1279 (11th Cir. 2004)). "For a charge to be timely, it must be filed within 180 days of the

last discriminatory act." *Mitchell*, 785 F. App'x at 735 (citing 42 U.S.C. § 2000e-5(e)(1)).

Thus, "generally speaking, only those claims arising within 180 days prior to the filing

of the discrimination charge are actionable." *Mitchell*, 785 F. App'x at 735 (citing *EEOC*

*v. Joe's Stone Crabs, Inc.*, 296 F.3d 1265, 1271 (11th Cir. 2002)). In some cases, however, a

continuing violation may extend the limitations period. *See Joe's Stone Crabs*, 296 F.3d at

1271. "But 'discrete, one-time employment events that should have put [a] [plaintiff] on

notice that a cause of action had accrued' do not constitute continuing violations."

*Mitchell*, 785 F. App'x at 735 (quoting *Joe's Stone Crabs*, 296 F.3d at 1271) (second

alteration in original); *see also Danielle-DiSerafino v. Dist. Sch. Bd. of Collier Cty.*, 756 F.

App'x 940, 942 n.2 (11th Cir. 2018) (per curiam) (affirming district court's decision that

the continuing violation doctrine did not apply where "each request for an accommodation was a discrete act").

Here, Plaintiff filed the relevant charge on April 18, 2017. [Doc. 29-46 at p. 1]. This means that only allegedly discriminatory events that occurred *after* October 20, 2016, are actionable under Title VII—anything that occurred before that date is, consequently, time barred. While Plaintiff's case entails several allegations of discriminatory misconduct as early as mid-2015, a review of Plaintiff's deposition and her Response to Defendant's summary judgment motion makes clear that she filed this lawsuit for "what happened after July 2016," not for anything that occurred in 2015.[7] [Doc. 29-20, Westbrooks Depo., p. 104:12–14]; [Doc. 37 at p. 11 ("Plaintiff's EEOC charge was timely filed on April 18, 2017[,] because the date of the act giving rise to the charge was '[s]ince about 2016[ ] and continuing . . . .")]; [Doc. 26-46 at p. 1].

Throughout this lawsuit, the parties focus heavily on Defendant's decision to remove Plaintiff's personal printer from her use while it permitted her proffered comparator, Bessie Stewart,[8] to keep her printer. However, as discussed below, any

---

[7] The Court notes that Defendant took Plaintiff's deposition on January 23, 2019, and that the post-July 2016 events to which Plaintiff is referring may have a great deal of importance for her second (and related) lawsuit, *Westbrooks v. Georgia Dep't of Human Services*, No. 5:19-cv-00465-TES (M.D. Ga. Nov. 25, 2019) ("*Westbrooks II*"), to the extent she timely filed her EEOC charge for those allegations, but not for this one.

[8] Given that Bessie Stewart is not the proper comparator for *this* case, the issue of Defendant's treatment of Bessie Stewart and its treatment of Plaintiff in May of 2017, must be put to Plaintiff's second lawsuit, *Westbrooks II*. Notwithstanding Defendant's line of questioning in Plaintiff's deposition taken on January 23, 2019, regarding Bessie Stewart's ability to have a printer in the exact same office Plaintiff used to be in,

comparator-based arguments with regard to Bessie Stewart and the printer removal are legally irrelevant.

At least three times in her deposition, Plaintiff states that Defendant took her printer in July of 2016. *See, e.g.*, [Doc. 29-20, Westbrooks Depo., p. 175:9–12 (confirming that Defendant took Plaintiff's printer "sometime in July of 2016")]; [*id.* at p. 177:10–12 (showing that Defendant took Plaintiff's printer when she moved up to the second floor "in July")]; [*id.* at pp. 184:24—185:1 (corroborating that "[t]he printer [Defendant] initially took away" from Plaintiff was "back in July of 2016")]. However, despite Plaintiff's apparent confusion as to *when* Defendant took her printer, the Court uses August of 2016, as the operative month in order to provide her with the latest date possible. *See* n.4, *supra.* August of 2016, however, is still outside the 180-day period immediately prior to the filing of her EEOC charge. Thus, any comparator-based argument using Bessie Stewart (or anyone for that matter) is simply irrelevant because any and all claims occurring before October 20, 2016, are not actionable in any way.[9] The only event not barred by the October 20, 2016 cut-off date concerns Plaintiff's

---

this allegation of discrimination and retaliation occurred in May of 2017. [Doc. 29-20, Westbrooks Depo., pp. 187:6—188:19]. The Court cannot consider these allegations in this lawsuit because the EEOC charge that controls this lawsuit was filed on April 18, 2017. [Doc. 29-46 at p. 1]. Thus, if Plaintiff seeks to allege that some "new" instance of discrimination and retaliation occurred in May of 2017, she could not have filed an EEOC charge for something that had yet to occur. *See generally* [Doc. 51-4]; *see also Westbrooks II*, No. 5:19-cv-00465-TES (M.D. Ga. Nov. 25, 2019), ECF No. 1-7.

[9] Thus, the Court **GRANTS** Defendant's Motion for Summary Judgment as it may relate to any Title VII claim that may have occurred prior to October 20, 2016.

complaints regarding the cold temperature in her office. [Doc. 29-20, Westbrooks Depo., pp. 185:20—186:16, 215:7—216:2]. Therefore, considering her medical condition, the obvious discriminatory allegations with which Plaintiff is concerned are the cold conditions of the first-floor office and Defendant's purported inability to accommodate her as quickly as it accommodated two white employees.

Around December 5, 2016,[10] Plaintiff claims that two white employees, Tammy Dinkins and Tina McMurray, also made complaints about their offices' extremely cold temperature. [*Id.* at pp. 164:9–19, 210:23—211:13, 215:15–22]. However, when they made temperature-related complaints to Defendant, it contacted maintenance who, according to Plaintiff, "immediately" came to check their office's temperature. [*Id.* at pp. 185:20—186:8, 215:15–22]. In contrast, Plaintiff claims that Defendant took approximately a month before it checked Plaintiff's office temperature. [*Id.* at p. 215:7–22]. Thus, she claims that "because [Tammy Dinkins and Tina McMurray are] Caucasian," they were treated better than she was. [*Id.* at p. 215:8–13]. Therefore, in order to succeed on a race-discrimination claim under Title VII, Plaintiff must demonstrate that Defendant discriminated against her on the basis of her race with regard to how quickly maintenance checked employees' temperature-related complaints.

---

[10] As previously noted, because of the 180-day filing deadline and when Plaintiff filed her EEOC charge—April 18, 2017—this is the only actionable claim that can be considered in this case.

### C.    <u>Discussion</u>

Plaintiff brings her case pursuant to Title VII of the Civil Rights Act of 1964, which makes it unlawful for an employer "to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." *Lewis v. City of Union City*, 918 F.3d 1213, 1220 (11th Cir. 2019) (quoting 42 U.S.C. § 2000e-2(a)(1)). "The language of Title VII makes plain the purpose of Congress to assure equality of employment opportunities and to eliminate . . . discriminatory practices and devices" used to disadvantage racial, gender, and religious minorities in the employment context. *Lewis*, 918 F.3d at 1220 (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 800 (1973)).

When, as here, a plaintiff is confronted with a defendant's motion for summary judgment on claims for race discrimination under Title VII, she must make a sufficient factual showing to permit a reasonable jury to rule in her favor. *Lewis*, 918 F.3d at 1220. While this can be done in a variety of ways, perhaps the most familiar—and most apt to this cas—is the three-part burden shifting framework established by the Supreme Court in *McDonnell Douglas*, 411 U.S. at 800–02. The *McDonnell Douglas* framework places the initial burden on a plaintiff to establish a prima facie case of race discrimination by proving that she was treated differently from some other "similarly situated" individual

or "comparator." *Lewis*, 918 F.3d at 1217 (citing *Texas Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 258–59 (1981)).

When a plaintiff alleges intentional discrimination and her claim faces a defendant's motion for summary judgment, she "must present sufficient facts to permit a jury to rule in her favor[,]" to ensure her claim's survival. *Lewis*, 918 F.3d at 1220. One way of ensuring that survival is, as just mentioned, to satisfy the three-part burden-shifting framework set out in *McDonnell Douglas*, 411 U.S. at 802. *Id.* Another way, which has not been asserted in this case, is to "demonstrate a 'convincing mosaic' of circumstantial evidence that warrants the inference of discrimination." *Id.* at n.6 (citing *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2001)).

As for the *McDonnell Douglas* route, a plaintiff bears the initial burden of establishing a prima facie case of intentional discrimination. *Lewis*, 918 F.3d at 1220. This burden can be met "by showing (1) that she belongs to a protected class, (2) that she was subjected to an adverse employment action, (3) that she was qualified to perform the job in question, and (4) that her employer treated 'similarly situated' employees outside her class more favorably." *Id.* at 1220–21 (citation omitted). If a plaintiff succeeds in making a prima facie case, "the burden [then] shifts to [a] defendant to articulate a legitimate, nondiscriminatory reason for its actions." *Id.* at 1221 (citing *Burdine*, 450 U.S. at 253). Then, if a defendant makes such an articulation, the burden shifts back to a plaintiff who must demonstrate that the proffered, nondiscriminatory

reason was "merely a pretext for unlawful discrimination, an obligation that 'merges with [a] [plaintiff's] ultimate burden of persuading the [factfinder] that she has been the victim of intentional discrimination.'" *Lewis*, 918 F.3d at 1221 (quoting *Burdine*, 450 U.S. at 256) (second and third alterations in original).

"[D]iscrimination," first and foremost, "consists of *treating like cases differently*[,]" and if this true, the converse must also be true: "Treating *different* cases differently is not discriminatory, let alone intentionally so." *Lewis*, 918 F.3d at 1222–23 (emphasis supplied) (first citing *N.L.R.B. v. Collier*, 553 F.2d 425, 428 (5th Cir. 1977) and then citing *Nix v. WLCY Radio/Rahall Commc'ns*, 738 F.2d 1181, 1186 (11th Cir. 1984)). Thus, the first burden of *McDonnell Douglas* essentially calls upon a plaintiff to show that she "was treated *differently* from another 'similarly situated' individual"—or, a comparator. *Lewis*, 918 F.3d at 1217 (citing *Burdine*, 450 U.S. at 258–59) (emphasis added).

*Lewis* reiterates that the procedural timing of the comparator analysis, "must be conducted at the prima facie stage of *McDonnel Douglas*'s burden-shifting framework." *Lewis*, 918 F.3d at 1218–24. However, in *Lewis*, the Eleventh Circuit Court of Appeals also definitively answered "[t]he obvious question: Just how 'similarly situated' must a plaintiff and her comparator(s) be?" *Id.* at 1217. In cases like this one, "a plaintiff must show that she and her comparators are 'similarly situated in all material respects." *Id.* at 1224.

In short, the Court concludes that Plaintiff did not make a prima facie case for race discrimination, because it does not have sufficient evidence with respect to who ought to be Plaintiff's proffered comparators for this case—Tammy Dinkins and Tina McMurray, not Bessie Stewart—to conduct a comparator analysis using the new standard announced in *Lewis*. *Id.* at 1229.

Easy points first: two of the four prongs of the prima facie case are undoubtedly satisfied. Plaintiff belongs to a protected class and given her deposition responses on the issue, the Court can easily conclude that she was "qualified to perform the job in question." *Id.* at 1220–21; [Doc. 29-20, Westbrooks Depo., p. 62:12–24 (discussing Plaintiff's disciplinary employment history)]. Accordingly, all that is left for the Court to determine is whether Plaintiff can show that Defendant's actions "subjected her to an adverse employment action" and that she and her true comparators, Tammy Dinkins and Tina McMurray, were "similarly situated in all material respects." *Lewis*, 918 F.3d at 1229. As for these two issues, there simply is not enough in the record for the Court to conclude that Plaintiff has made a prima facie case of race discrimination. Thus, Defendant is entitled to summary judgment.

First, to qualify as adverse employment action under Title VII, "the employer's action must impact the terms, conditions, or privileges of [a] plaintiff's job in a real and demonstrable way." *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1239 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53 (2006). The

impact must be "serious and material," and a reasonable person in the circumstances presented must have found that the action was materially adverse. *Davis*, 245 F.3d at 1239.

Again, the parties heavily focus on whether Defendant's removal of Plaintiff's individual desk printer constitutes an adverse employment action; however, that incident, as discussed above, occurred in August of 2016 and is time barred by the 180-day period.[11] Consequently, the true issue becomes whether Defendant's failure to request a check of or adjust Plaintiff's office temperature as quickly as it did for two white employees qualifies as an adverse employment action. Considering the Eleventh Amendment's bar of Plaintiff's ADA claims, the Court finds her complaints about the cold air (found in her deposition testimony) to be, for Title VII purposes, descriptive of only mere discomforts.

"The Supreme Court has stressed that Title VII provides no protection against 'those petty slights or minor annoyances that often take place at work and that all employees experience.'"[12] *Harrison v. Belk, Inc.*, 748 F. App'x 936, 943 (11th Cir. 2018) (quoting *Burlington*, 548 U.S. at 68). Without more, Plaintiff has failed to articulate—on either a factual or legal basis (and the Court likewise cannot find any case law to

---

[11] While true for other instances as well, this instance, i.e., Defendant's refusal to return Plaintiff's printer, sufficiently placed her on notice that a cause of action had occurred. *Mitchell*, 785 F. App'x at 735.

[12] Even by Plaintiff's own account, she was not the only employee bothered by the cold temperature. [Doc. 29-20, Westbrooks Depo., p. 186:1–5].

support such a narrow claim)—that Defendant's actions regarding the cold temperature[13] in her office is an adverse employment action for Title VII purposes. Plaintiff, therefore, cannot make a prima facie case of race discrimination.

Even if Defendant's failure to check Plaintiff's office temperature as quickly as it did for two white employees could possibly be stretched so far as to be considered an adverse employment action predicated upon race discrimination, Plaintiff has not shown that she, Tammy Dinkins and Tina McMurray are similarly situated in all material respects. *Lewis*, 918 F.3d at 1224. Perhaps because of her mistaken focus on Bessie Stewart (in this lawsuit), Plaintiff presents insufficient comparator-oriented evidence with respect to Tammy Dinkins and Tina McMurray.

For instance, Plaintiff's sole evidence of discrimination is that her true comparators—Tammy Dinkins and Tina McMurray—are white. [Doc. 29-20, Westbrooks Depo., pp. 185:20—186:8]. That's it. As *Lewis* made crystal clear, a Title VII plaintiff must show more than her comparators are of a different race than she. *Lewis*, 918 F.3d at 1227 (providing a non-exhaustive list by which a Title VII plaintiff may show a valid comparator). Other than their race, Plaintiff knows nothing (that is helpful to the Court's analysis) about Tammy Dinkins or Tina McMurray. All Plaintiff knows is

_____

[13] Contrary to Plaintiff's assertion that the cold temperature "should have been based on [her] body's temperature, not somebody else's," the Eleventh Circuit Court of Appeals has clearly stated that when determining whether an action is "materially adverse," the determination is to be made from the perspective of "a reasonable person in the circumstances." *Davis*, 245 F.3d at 1239–40; [Doc. 29-20, Westbrooks Depo., p. 166:1–5]. As shown by Plaintiff's testimony, other employees equally endured cold temperatures in their offices. [*Id.* at p. 186:3–5].

that "they're in the same office [as the woman who took Plaintiff's printer]." [Doc. 29-20, Westbrooks Depo., p. 186:9–16]. She does not, however, even "know what they do." [*Id.* at p. 186:13]. This is simply not enough. With this scant amount of comparator evidence, the Court cannot conduct the requisite, comprehensive comparator analysis mandated by *Lewis* to evaluate whether Tammy Dinkins and Tina McMurray are similarly situated to Plaintiff in all material respects. *Lewis*, 918 F.3d at 1224.

Accordingly, Plaintiff failed to make a prima facie case for race discrimination under Title VII, and Defendant is entitled to summary judgment on this claim as well.

## IV.    CONCLUSION

Based upon the foregoing, the Court **GRANTS** Defendant Georgia Department of Human Services' Motion for Summary Judgment [Doc. 29] because (1) Plaintiff's Title I and Title V ADA claims are barred by the Eleventh Amendment, (2) all but one of her Title VII claims are time barred, and (3) because she fails to demonstrate a prima facie case of race discrimination for her sole actionable Title VII claim. The Clerk of Court is accordingly **DIRECTED** to enter Judgment in favor of Defendant and **CLOSE** this case.

**SO ORDERED**, this 27th day of January, 2020.

S/ Tilman E. Self, III
**TILMAN E. SELF, III, JUDGE**
**UNITED STATES DISTRICT COURT**